### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



JAMES M. TIBOR, )
)
              Plaintiff, )
)
              v. )
)
BRIDGE CAPITAL CORPORATION, )
HOMEQ SERVICING CORPORATION., )
and THOMAS E. SPRINGER, not individually )
but in his capacity as Chapter 7 trustee )
of Danielle Tibor, )
)
              Defendants. )

JUDGE AMY ST. EVE

02C 7202

MAGISTRATE JUDGE ASHMAN

**JURY DEMAND**

## COMPLAINT

### MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.     Plaintiff, James M. Tibor brings this action to secure redress for fraudulent lending practices engaged in by Bridge Capital Corporation and HomEq Servicing Corporation.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under 28 U.S.C. §§1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), 12 U.S.C. § 2607 (RESPA), and 15 U.S.C. § 1640 (TILA). Venue in this District is proper because defendants do business here.

### PARTIES

3.     Plaintiff James M. Tibor is part of a married couple who live in a single family home which they own at 2074 Clementi Lane, Aurora, IL 60504.

1

4.      Defendant Bridge Capital Corporation ("Bridge Capital") is a California corporation that does business in Illinois. Its principal place of business is 25391 Commercentre Drive, Suite 100, Lake Forest, CA., 92630. Its registered agent and office in Illinois are National Registered Agents, Inc., 208 S. LaSalle St., Suite 1855, Chicago, Illinois 60604. Bridge Capital is in the business of originating and servicing loans.

5.      Defendant HomEq Servicing Corporation ("HomEq") is a New Jersey corporation that does business in Illinois. Its principal place of business is 4837 Watt Avenue, North Highlands, CA 95660. Its registered agent and office in Illinois are Illinois Corporation Service Co., 700 South Second Street, Springfield, IL 62704. It is engaged in the mortgage servicing business.

6.      Thomas E. Springer is trustee in a case, 02 B 20341, brought by plaintiff's wife, Danielle Tibor, in the Bankruptcy Court of the Northern District of Illinois, Eastern Division. Mr. Springer is named as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

## FACTS

7.      On October 10, 2001, plaintiff obtained a $77,555 second mortgage loan from Bridge Capital. The loan was obtained for personal, family or household purposes.

8.      In connection with the loan, plaintiff signed the following documents:

   a.      A note, Exhibit A;

   b.      A mortgage, Exhibit B;

   c.      A HUD-1 Settlement Statement, Exhibit C.

9.      Because the transaction was secured by plaintiff's home, and was not entered

2

into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a) Consumer's right to rescind.

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) **How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

(4) **The effects of rescission, as described in paragraph (d) of this section.**

(5) **The date the rescission period expires. . . .**

(f) Exempt transactions. **The right to rescind does not apply to the following:**

(1) **A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

(2) **A credit plan in which a state agency is a creditor.**

10.     In connection with this transaction, plaintiff received a notice of right to cancel, attached as Exhibit D.

11.     Nowhere on Exhibit D is the date the rescission period expires specifically disclosed, as is required by 12 C.F.R. § 226.23(b)(5).

12.     On August 22, 2002, plaintiff gave Bridge Capital and HomEq notice of his election to rescind the loan. (Exhibit E)

13.     Paragraph 3 of the Exhibit A required plaintiff to make payments of $890 to Bridge Capital beginning on December 01, 2001.

14.     Plaintiff tendered his first payment to Bridge Capital by personal check in late November 2001.

15.     Bridge Capital cashed the check containing plaintiff's December payment on or about December 1, 2001.  A copy of the canceled check is attached as Exhibit F.

16.     Sometime between October 10, 2001 and late December 2001, Bridge Capital sold plaintiff's loan to HomEq.

4

17. Plaintiff did not receive written notice from either Bridge Capital or HomEq that HomEq had purchased his loan from Bridge Capital.

18. Plaintiff first learned that his loan had been sold when HomEq notified him of that fact in a telephone conversation in late December 2001.

19. HomEq called plaintiff in late December 2001, claiming that plaintiff had not made his December payment.

20. Upon HomEq's request, plaintiff has sent HomEq proof three different times that his first payment was received and cashed by Bridge Capital.

21. HomEq treated plaintiff's January 2002 payment as a late payment for December 2001. Each month, HomEq treats plaintiff's monthly payment as a late payment for the previous month.

22. Since January 2002, plaintiff has received several calls a day from HomEq, demanding his mortgage payment, even though plaintiff has made all his payments in a timely manner.

23. On June 6, 2002 plaintiff sent HomEq a qualified written request by certified mail, seeking information about his payment history. HomEq received the letter on June 6, 2002. The letter is attached hereto as Exhibit G.

24. HomEq did not respond as required to Exhibit G.

### COUNT I – CRANSTON -GONZALES AMENDMENT

25. Plaintiff incorporates ¶¶1- 24. This claim is against HomEq.

26. Exhibit G is a "qualified written request" as defined in 12 U.S.C. § 2605.

27. The Cranston-Gonzales amendment to the Real Estate Settlement Procedures

Act, 12 U.S.C. § 2605(e), provides:

**(e) Duty of loan servicer to respond to borrower inquiries.**

**(1) Notice of receipt of inquiry.**

**(A) In general.** If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

**(B) Qualified written request.** For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

**(2) Action with respect to inquiry.** Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating. During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USC §1681a]).

28.    HomEq has not complied with its obligations under § 2605(e) with respect to plaintiff's qualified written request (Exhibit G). Defendant neither acknowledged nor responded to Exhibit G within the period specified.

29.    12 U.S.C. §2605(f) provides:

(f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals. In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure;

**and**

**(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000. . . .**

**(3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances. . . .**

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against HomEq for:

a.　　Compensatory damages;

b.　　Statutory damages;

c.　　Attorney's fees, litigation expenses and costs of suit;

d.　　Such other or further relief as the Court deems proper.

## COUNT II - RESPA VIOLATION

30.　　Plaintiff incorporates ¶¶ 1-24. This claim is against Bridge Capital and HomEq.

31.　　Defendant Bridge Capital is a "transferor of loan servicing" as defined in 12 U.S.C. § 2605 (b).

32.　　Defendant HomEq is a "transferee of loan servicing" as defined in 12 U.S.C. § 2605(c).

33.　　Real Estate Settlement Procedures Act § 2605 (a-d) provides:

**(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing**

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer

    (1) Notice requirement

    Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.

    (2) Time of notice

        (A) In general

        Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made)
        .....

    (3) Contents of notice

    The notice required under paragraph (1) shall include the following information:

        (A) The effective date of transfer of the servicing described in such paragraph.

        (B) The name, address, and toll-free or collect call telephone number of the transferee servicer.

        (C) A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

        (D) The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the

9

department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

(E) The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

(F) Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

(G) A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).
....
(3) Contents of notice

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

10

**(d) Treatment of loan payments during transfer period**

**During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.**

**...**

34.    Bridge Capital and HomEq did not comply with their obligation to disclose the transfer of plaintiff's loan.   In addition, they violated §2605(d) by failing to credit plaintiff's payment and then repeatedly imposing late fees as a result.

35.    RESPA § 2605(f) provides:

**(f) Damages and costs**

**Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:**

**(1) Individuals**

**In the case of any action by an individual, an amount equal to the sum of--**

**(A) any actual damages to the borrower as a result of the failure; and**

**(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.**

**(2) Class actions**

**In the case of a class action, an amount equal to the sum of--**

**(A) any actual damages to each of the borrowers in the class as a result of the failure; and**

11

**(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--**

**(i) $500,000; or**

**(ii) 1 percent of the net worth of the servicer.**

**(3) Costs**

**In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.**

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against Bridge Capital and HomEq for:

a.     Compensatory damages;

b.     Statutory damages;

c.     Attorney's fees, litigation expenses and costs of suit;

d.     Such other or further relief as the Court deems proper.

## COUNT III – DEFAMATION

36.     Plaintiff incorporates ¶¶ 1-24. This count is against HomEq.

37.     After December 2001 HomEq reported to credit reporting agencies that plaintiff had made some late mortgage payments.

38.     These reports were false.

39.     These statements were defamatory in that (a) they were false, and (b) they

12

have caused plaintiff's reputation such harm that it lowers plaintiff in the eyes of the community and deters third persons from associating with plaintiff.

40.     HomEq acted with intent to harm plaintiff.

41.     Substantial punitive damages are warranted.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiffs and against defendant, HomEquity for:

    a.     General compensatory and punitive damages;

    b.     Costs; and

    c.     Such other or further relief as the Court deems appropriate.

## COUNT IV - TILA

42.     Plaintiff incorporates ¶¶1-24. This claim is against Bridge Capital and HomEq.

43.     Bridge Capital provided plaintiff with a Notice of Right to Cancel that did not specifically disclose the date the rescission period expires, as is required by 12 C.F.R. 226.23(b)(5).

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against Bridge Capital and HomEq for:

    a.     Rescission of plaintiff's loan;

    b.     Statutory damages;

    c.     Attorney's fees, litigation expenses and costs;

    d.     Such other or further relief as the Court deems appropriate.

## COUNT V - ILLINOIS CONSUMER FRAUD ACT VIOLATION

44.     Plaintiff incorporates ¶¶ 1-24.  This claim is against Bridge Capital and HomEq.

45. Defendants Bridge Capital and HomEq engaged in unfair and deceptive acts and practices, in violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by:

    a. Failing to notify plaintiff of the transfer of servicing;

    b. Failing to account for the payment plaintiff sent to Bridge Capital;

    c. In the case of HomEq, repeatedly imposing late fees when forbidden to do so under RESPA;

    d. In the case of HomEq, reporting to credit bureaus that plaintiff was paying late when he was not.

46. Defendants engaged in such acts and practices in the course of trade and commerce.

47. Defendants intended to affect plaintiff's conduct through such acts and practices.

48. Plaintiff was damaged as a result.

49. HomEq acted with intent to harm plaintiff.

50. Substantial punitive damages are warranted.

WHEREFORE, plaintiff requests that the Court enter judgment in his favor and against Bridge Capital and HomEq for:

    a. Compensatory damages;

    b. Statutory damages;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as the Court deems proper.

14

_____
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS & LATTURNER, LLC
120 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.

_____
Daniel A. Edelman

I:\case\bridge8.848\pleading\complaint.wpd

# EXHIBIT A

October 10, 2001
LAKE FOREST, CALIFORNIA

# NOTE

PROPERTY ADDRESS:   2074 CLEMENTI LANE
AURORA, IL 60504

App No.  LLS-01-0000123

**1.   BORROWER'S PROMISE TO PAY:** In return for a loan that I have received, I promise to pay U.S.   $77,555.00   (this amount will be called "principal"), plus interest, to the order of the Lender.  The Lender is
BRIDGE CAPITAL CORPORATION
I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2.   INTEREST:**   I will pay interest at a yearly rate of  12.670 %.   Interest will be charged on unpaid principal  until the full amount of principal has been paid.

**3.   PAYMENTS:**  I will pay principal and interest by making payments each month of U.S.   $890.45   .  I will make my payments on the   1st   day of each month beginning on   December 01, 2001   .  I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note.  If, on   November 01, 2021   , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at   25391 COMMERCENTRE DRIVE, SUITE 100
or at a different place if required by the Note Holder.  LAKE FOREST, CA 92630

**4.  BORROWER'S FAILURE TO PAY AS REQUIRED:**
**(a)  Late Charge for Overdue Payments:** If the Note Holder has not received the full amount of any of my monthly payments by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5.0   % of my overdue payment, but not less than U.S.   $5.00   and not more than U.S.   $44.52   .  I will pay this late charge only once on any late payment.
**(b)  Notice From Note Holder:**  If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default.  That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
**(c)  Default:**  If I do not pay the overdue amount by the date stated in the notice described in (b) above, I will be in default.  If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(d)  Payment of Note Holder's Costs and Expenses:**  If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**5.  THIS NOTE SECURED BY A MORTGAGE:**  In addition to the protections given to the Note Holder under this Note, a Mortgage, dated   October 10, 2001   , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6.   BORROWER'S PAYMENTS BEFORE THEY ARE DUE:**  I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in a letter that I am doing so.  A prepayment of all of the unpaid principal is known as a "full prepayment."  A prepayment of only part of the unpaid principal is known as a "partial prepayment."
I may make a full prepayment or a partial prepayment without paying any penalty.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.  I may make a full prepayment at any time.  If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due.  The Note Holder  may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7.   BORROWER'S WAIVERS:**  I waive my rights to require the Note Holder to do certain things.  Those things are:  (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest").  Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights.  These persons are known as "guarantors, sureties and endorsers."

**8.   GIVING OF NOTICES:**  Any notice that must be given to me under this Note will be given by delivering it or by mailing  it by certified mail addressed to me at the Property Address above.  A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above.  A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9.   RESPONSIBILITY OF PERSONS UNDER THIS NOTE:**  If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note.  Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things.  The Note Holder may enforce its rights under this Note against each of us individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.  Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note.  Any person who takes over  the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

NOTICE TO BORROWER:  Do not sign this Note if it contains blank spaces.  All spaces should be completed before you sign.

X_____          X_____
         JAMES TIBOR

X_____          X_____

(Sign Original Only)
ILLINOIS - Second Mortgage - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT - Form 3914

# EXHIBIT B

## MORTGAGE
### Page 1 of 6

This instrument was prepared by:

BRIDGE CAPITAL CORPORATION

25391 COMMERCENTRE DRIVE, SUITE 100
LAKE FOREST, CA 92630

THIS MORTGAGE is made this day,     October 10, 2001     , between the Mortgagor,
**JAMES TIBOR AND DANIELLE TIBOR, HUSBAND AND WIFE**

(herein "Borrower"),

and the Mortgagee,                         BRIDGE CAPITAL CORPORATION

(herein "Lender").

a corporation organized and existing under the laws of     CALIFORNIA     , whose address is
25391 COMMERCENTRE DRIVE, SUITE 100
LAKE FOREST, CA 92630

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S.     $77,555.00     , which indebtedness is evidenced by Borrower's note dated     October 10, 2001     and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on     November 01, 2021     ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with the interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of     DU PAGE     , State of Illinois:

**See attached Exhibit "A"**

which has the address of:     **2074 CLEMENTI LANE**
**AURORA, IL 60504**

(herein "Property Address");

App # LLS-01-0000123

Initials: _____     Initials: _____     Initials: _____     Initials: _____

ILLINOIS - Second Mortgage - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT - Form 3814 (Page 1 of 6)

Management Systems Development, Inc. (800) 984-6060     *Loan Energizer!™*     #IL_MORT(12/17/98typ)     Copyright (c) 1994

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments , if any) which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by the Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

App # LLS-01-0000123

Initials:_____  Initials:_____  Initials:_____  Initials:_____

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leasehold; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

App # LLS-01-0000123

Initials:_____    Initials:_____    Initials:_____    Initials:_____

Management Systems Development, Inc. (800) 984-6060          *Loan Energizer!™*          #IL_MORT          Copyright (c) 1994

**11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Trustee under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, as assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

App # LLS-01-0000123

Initials:_____    Initials:_____    Initials:_____    Initials:_____

Management Systems Development, Inc.   (800) 984-6060          Loan Energizer!™          #IL_MORT          Copyright (c) 1994

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would then be due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by the court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without cost to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

App # LLS-01-0000123

Initials:_____    Initials:_____    Initials:_____    Initials:_____

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

X_____     X_____
   JAMES TIBOR

X_____     X_____

---

STATE OF ILLINOIS,

_____, County ss:

I, _____, a Notary Public in and for said county and state, do hereby certify that _____

_____

_____

personally known to me to be the same person(s) whose name(s) _____ subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that ___he___ signed and delivered the said instrument as _____ free voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this _____ day of _____, _____.

My Commission expires:

X_____
          Notary Public

**CAPACITY CLAIMED BY SIGNER(S):**

[ ] INDIVIDUAL(S) SIGNING FOR ONESELF/THEMSELVES

[ ] CORPORATE OFFICER(S) _____
                        Title(s)

                               Company

[ ] PARTNER(S) _____
                 Partnership

[ ] ATTORNEY-IN-FACT _____
                 Principals

[ ] TRUSTEE(S) _____
                 Trust

[ ] OTHER _____
                 Title(s)

[ ] OTHER _____
                 Title(s)

---

(Space Below This Line Reserved For Lender and Recorder)

App # LLS-01-0000123

# EXHIBIT C

# Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

| Name and Address of Borrower:<br>JAMES TIBOR<br><br>2074 CLEMENTI LANE<br>AURORA, IL 60504 | Names & Address of Lender:<br>BRIDGE CAPITAL CORPORATION<br><br>25391 COMMERCENTRE DRIVE, SUITE 100<br>LAKE FOREST, CA 92630 |
|---|---|
| Property location (if different from above):<br>2074 CLEMENTI LANE<br>AURORA, IL 60504 | Settlement Agent:  BRIDGE CAPITAL CORPORATION |
| | Place of Settlement:  LAKE FOREST, CA |
| Loan Number (App Number): LLS-01-0000123 | Settlement Date:  10/10/2001 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENTS TO OTHERS | |
|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 1501. | |
| 801. Loan Origination fee 2.973 % to BRIDGE CAPITAL | $2,305.00 | | |
| 802. Loan Discount 0.000 % to | | 1502. PROVIDIAN | $5,806. |
| 803. Appraisal fee to | | | |
| 804. Credit Report to | | 1503. FCNB-SPIEGEL | $2,768. |
| 805. Inspection fee to | | | |
| 806. Mortgage Insurance application fee to | | 1504. PROVIDIAN | $2,345. |
| 807. Mortgage Broker Fee to | | | |
| 808. PROCESSING FEE:LAGUNA LENDING SERVICES | $580.00 | 1505. HOMEQ | $44,386. |
| 809. UNDERWRITING FEE:LAGUNA LENDING SERVICES | $495.00 | | |
| 810. DOC PREP FEE:LAGUNA LENDING SERVICES | $195.00 | 1506. | |
| 811. COURIER FEE:LAGUNA LENDING SERVICES | $75.00 | | |
| 900. Items Required by Lender to be Paid in Advance | | 1507. | |
| 901. Interest from 10/15/2001 to 11/01/2001 @ 26.92 per day | $457.64 | | |
| 902. Mortgage Insurance premium for 0 months to | | 1508. | |
| 903. Hazard Insurance premium for 0 year(s) to | | 1509. | |
| 904. | | 1510. | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Hazard Insurance months @ per month | | 1511. | |
| 1002. Mortgage Insurance months @ per month | | | |
| 1003. City property taxes months @ per month | | 1512. | |
| 1004. County property taxes months @ per month | | | |
| 1005. Annual assessments months @ per month | | 1513. | |
| 1006. months @ per month | | | |
| 1100. Title Charges | | 1514. | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | 1515. | |
| 1103. Title examination to | | | |
| 1104. Title Insurance binder to | | 1520. TOTAL DISBURSED (enter on line 1603) | $55,305. |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to<br>(Includes above item numbers ) | | | |
| 1108. Title Insurance to BENEFIT LAND TITLE INSURANCE COMPANY<br>(Includes above item numbers BENEFIT LAND TITLE INS CO ) | $250.00 | | |
| 1109. Lender's coverage | | N. NET SETTLEMENT | |
| 1110. Owner's coverage | | | |
| 1111. FLOOD CERT: FIRST AMERICAN FLOOD DATA | $20.00 | 1600. Loan Amount | $77,555. |
| 1112. SUB-ESCROW FEE:BENEFIT LAND TITLE INS CO | $255.00 | | |
| 1200. Government Recording and Transfer Charges | | 1601a. Plus Cash/Check from Borrower $0.00 POC/B | |
| 1201. Recording fees to: | | | |
| 1202. City/county tax/stamps to: | | 1601b. Plus Cash/Check from Borrower $0.00 POC/B | |
| 1203. State tax/stamps to: | | | |
| 1204. | | 1602. Minus Total Settlement Charges (line 1400) | $4,633.6 |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey to | | 1603. Minus Total Disbursements to Others (line 1520) | $55,305.0 |
| 1302. Pest inspection to | | | |
| 1303. Architectural/engineering services to | | 1604. Equals Disbursements to Borrower | $17,616.3 |
| 1304. Building Permit to | | (after expiration of any applicable | |
| 1305. | | rescission period required by law) | |
| 1400. Total Settlement Charges (enter on line 1602) *Excluding POC Items* | $4,633.64 | *Excluding all POC items.* | |

The undersigned hereby acknowledge receipt of a completed copy of this statement:

POC/B = Paid Outside Closing by Borrower, /L = by Lender,
/D = by Dealer/Contractor, /S = by Seller, /R = by Broker

X_____

  JAMES TIBOR

X_____

X_____

X_____

# EXHIBIT D

# NOTICE OF RIGHT TO CANCEL

10/10/2001

| | |
|---|---|
| **BRIDGE CAPITAL CORPORATION**<br><br>25391 COMMERCENTRE DRIVE, SUITE 100<br>LAKE FOREST, CA 92630<br><br>TEL: (800)250-5626<br>FAX: (949)206-0963 | Subject Property Address:<br><br>2074 CLEMENTI LANE<br>AURORA, IL 60504<br><br>App No. LLS-01-0000123 |

You are entering into a transaction that will result in a mortgage, deed of trust or security deed ("security interest") on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is **10/10/2001** ; or
2. The date you received your Truth-in-Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address above. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing at the address listed above.

You may use any written statement that is signed and dated by you, and that states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of
(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL,

_____      _____
SIGNATURE                                                        DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth-in-Lending Disclosure Statement, all given by Lender in compliance with the Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each Borrower in this transaction has the right to cancel. The exercise of this right by one Borrower shall be effective as to all Borrowers.

DATE:_____

X_____      X_____
JAMES TIBOR

X_____      X_____

# EXHIBIT E

LAW OFFICES
## Edelman, Combs & Latturner
18TH FLOOR
120 SOUTH LASALLE STREET
CHICAGO, ILLINOIS 60603
(312) 739-4200
FAX (312) 419-0379

August 23, 2002

**VIA REGULAR & CERTIFIED MAIL**

Bridge Capital Corporation
c/o National Registered Agents, Inc.
208 S. LaSalle St., Suite 1855
Chicago, Illinois 60604

Re:   **Notice of Rescission:** *James Tibor v. Bridge Capital Corp. and Homeq Servicing Corp.*

Our Case No. 8.848

To whom it may concern:

You are hereby notified that James Tibor rescinds any and all security interests which you may have in his property at 2074 Clementi Lane, Aurora, IL 60504, for failure to comply with the Truth in Lending Act.

Sincerely,

Daniel A. Edelman

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bridge Capital Corporation
c/o National Registered Agents
208 S. LaSalle St., Suite 1855
Chicago, Illinois 60604

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number

LAW OFFICES

EDELMAN, COMBS & LATTURNER
18TH FLOOR
120 SOUTH LASALLE STREET
CHICAGO, ILLINOIS 60603
(312) 739-4200
FAX (312) 419-0379

August 23, 2002

**VIA REGULAR & CERTIFIED MAIL**

Homeq Servicing Corporation
c/o registered agent
Illinois Corporation Service Co.
700 South 2d Street
Springfield, IL 62704

> Re:   **Notice of Rescission**   *James Tibor v. Bridge Capital Corp. and*
> *Homeq Servicing Corp.*
>
> Our Case No. 8.848

To whom it may concern:

You are hereby notified that James Tibor rescinds any and all security interests which you may have in his property at 2074 Clementi Lane, Aurora, IL 60504, for failure to comply with the Truth in Lending Act.

Sincerely,

Daniel A. Edelman

| NDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. Print your name and address on the reverse so that we can return the card to you. Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X _____ ☐ Agent ☐ Addressee |
| | B. Received by ( *Printed Name*)    C. Date of Delivery   8/06/02 |
| Article Addressed to: | D. Is delivery address different from item 1? ☐ Yes   If YES, enter delivery address below: ☐ No |
| omeq Servicing Corporation 'o registered agent llinois Corporation Service Co. )0 South 2d Street oringfield, IL 62704 | |
| | 3. Service Type ☒ Certified Mail  ☐ Express Mail ☐ Registered  ☐ Return Receipt for Merchandise ☐ Insured Mail  ☐ C.O.D. |
| | 4. Restricted Delivery? *(Extra Fee)*   ☐ Yes |
| Article Number | 7001 2510 0001 6819 8032 |

# EXHIBIT F

MBER FDIC



BRIDGE CAPITAL
FOR DEPOSIT ONLY

40992080870943287097
Am Nat

# EXHIBIT G



June 7, 2002

Home Eq
4838 Watt Avenue
North Highlands, California  95660

Via Certified US Mail, return receipt

To Whom It May Concern:

I am requesting a complete and clear payment history of my loan, account number 307665893. The payment history should consist of the following:

1. The date on which you received each of my payments.
2. The exact amount of each payment you received.
3. The month each payment was applied to.
4. A clear breakdown of how each payment was applied.
5. A clear explanation of any and all other fees, if any, which have been applied to my account.

Thank you for your prompt consideration in this matter.

Sincerely,

James Tibor
2074 Clementi Lane
Aurora, Illinois  60504



AUG-29-2002 02:21 AM  JAMES TIBOR          50 236 6693          P.03



# STATEMENT OF ACCOUNTS

Date: 12/21/2001
Page: 11 of 11
1110016842080

✎JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| James M. Tibor | Bridge Capital Corporation, et al. |

*JUDGE AMY ST. EVE*

*MAGISTRATE JUDGE ASHMAN*

*DOCKETED*
*OCT 0 8 2002*

**(b)** County of Residence of First **Will**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
EDELMAN, COMBS & LATTURNER, LLC.
120 S. LASALLE STREET 18TH FLOOR
CHICAGO, IL 60603
(312) 739-4200

Attorneys (If Known)

**02C 7202**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | DEF | | | DEF |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | or Defendant) | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | State Statutes |
| | | ☐ 550 Civil Rights | | | X 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)
Fraudulent lending practices; Cranston-Gonzales Amendment, 12 U.S.C. section 2605(e)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE 10/7/02
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

In the Matter of: James M. Tibor v. Bridge Capital Corporation, et al.

JUDGE AMY ST. EVE

Case Number: 02 C 7202

MAGISTRATE JUDGE ASHMAN

DOCKETED
OCT 08 2002

FILED-ED4
02 OCT -7 PM
CLERK
U.S. DISTRICT COURT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

**Plaintiff**

| (A) | | (B) | |
|---|---|---|---|
| SIGNATURE | | SIGNATURE | |
| NAME | Daniel A. Edelman | NAME | Cathleen M. Combs |
| FIRM | Edelman, Combs & Latturner | FIRM | Edelman, Combs & Latturner |
| STREET ADDRESS | 120 S. LaSalle Street, 18th Floor | STREET ADDRESS | 120 S. LaSalle Street, 18th Floor |
| CITY/STATE/ZIP | Chicago, Illinois 60603 | CITY/STATE/ZIP | Chicago, Illinois 60603 |
| TELEPHONE NUMBER | (312) 739-4200 | TELEPHONE NUMBER | (312) 739-4200 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | 00712094 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | 00472840 |
| MEMBER OF TRIAL BAR? | YES X    NO | MEMBER OF TRIAL BAR? | YES X    NO ☐ |
| TRIAL ATTORNEY? | YES X    NO | TRIAL ATTORNEY? | YES X    NO ☐ |
| | | DESIGNATED AS LOCAL COUNSEL? | YES ☐    NO X |

| (C) | | (D) | |
|---|---|---|---|
| SIGNATURE | | SIGNATURE | |
| NAME | James O. Latturner | NAME | Francis R. Greene |
| FIRM | Edelman, Combs & Latturner | FIRM | Edelman, Combs & Latturner |
| STREET ADDRESS | 120 S. LaSalle Street, 18th Floor | STREET ADDRESS | 120 S. LaSalle Street, 18th Floor |
| CITY/STATE/ZIP | Chicago, Illinois 60603 | CITY/STATE/ZIP | Chicago, Illinois 60603 |
| TELEPHONE NUMBER | (312) 739-4200 | TELEPHONE NUMBER | (312) 739-4200 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | 01588095 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | 06272313 |
| MEMBER OF TRIAL BAR? | YES X    NO ☐ | MEMBER OF TRIAL BAR? | YES ☐    NO X |
| TRIAL ATTORNEY? | YES X    NO ☐ | TRIAL ATTORNEY? | YES ☐    NO X |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐    NO X | DESIGNATED AS LOCAL COUNSEL? | YES ☐    NO X |